UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JC INTERNATIONAL FINANCE LIMITED, PROMINENCE TRUST LIMITED, SOUTHWIND MEDIA HOLDINGS LIMITED, FENTON CAPITAL INC., MIDTERM SUCCESS LIMITED, ANGEL PRIDE HOLDINGS LIMITED, FORTUNEGATE HOLDINGS PHILIPPINES INC., GOLDENWAY JAPAN CO., LTD., GOLDENWAY PRECIOUS METALS LIMITED, GOLDENWAY FINANCIAL HOLDINGS LIMITED, GOLDENWAY INVESTMENTS HOLDINGS LIMITED, INTERNATIONAL ENTERTAINMENT COMPANY, DISCOVERY KEY INVESTMENTS LIMITED, ASIAN CREATIVE CAPITAL LIMITED, HO WONG MENG, HONG WAI CHENG

Plaintiffs,

v.

CHRISTIAN LAMARCO and SHADYSIDE PARTNERS, LLC d/b/a CULPER RESEARCH,

Defendants. | Civil Action No.:

COMPLAINT

DEMAND FOR JURY TRIAL |

Plaintiffs JC International Finance Limited ("JC International Finance"), Prominence Trust Limited ("Prominence Trust"), Southwind Media Holdings Limited ("Southwind Media"), Fenton Capital Inc. ("Fenton Capital"), Midterm Success Limited, Angel Pride Holdings Limited ("Angel Pride"), FortuneGate Holdings Philippines Inc. ("FortuneGate Holdings Philippines"), Goldenway Japan Co., Ltd. ("Goldenway Japan"), Goldenway Precious Metals Limited, Goldenway Financial Holdings Limited, Goldenway Investments Holdings Limited, International Entertainment Company ("IEC"), Discovery

1

Key Investments Limited ("Discovery Key"), Asian Creative Capital Limited ("Asian Creative Capital"), Ho Wong Meng and Hong Wai Cheng bring this action for libel per se against Defendants Christian Lamarco ("Lamarco") and Shadyside Partners, LLC d/b/a Culper Research ("Culper," and with Lamarco, "Defendants").

## PRELIMINARY STATEMENT

Defendants publish self-professed "research" into publicly traded companies, purporting to expose the truth and ferret out secrets. In fact, the name "Culper" "pays homage to the Culper Spy Ring, tasked during the American Revolution by General Washington to report on the movements of British forces." Seeking to capitalize on this legacy, Culper says that it "take[s] an exhaustive, investigative approach to investment research."[1]

But Defendants' motives are anything but selfless. Despite its lofty name, Culper (and Lamarco) make a living through short-and-distort schemes: they short-sell public companies and then spread disparaging and defamatory statements about these companies in order to cause the stock price to crater while Defendants cash out. Such tactics are not only potentially criminal[2]; they also cause significant harm to those caught up in Defendants' wake. And Defendants know that—they have been sued for defamation numerous times in connection with their invective campaigns.

On June 12, 2025, Defendants set their sights on AppLovin Corporation ("AppLovin"), publishing a guilt-by-association hit piece on the purported relationship

---

[1] https://culperresearch.com/about-us/.
[2] *See, e.g.*, "U.S. jury finds investor Andrew Left guilty of securities fraud," *CNBC.com*, June 2, 2026, https://www.cnbc.com/2026/06/02/us-jury-finds-investor-andrew-left-guilty-of-securities-fraud.html.

between AppLovin and Mr. Hao Tang, a Chinese investor and businessman, and Mr. Tang's allegedly affiliated companies.  In order to carry out their short and distort scheme, Defendants paint a lurid picture by making false claims about Mr. Tang's purported ties to human trafficking, murder for hire, and more.  The idea was to crater AppLovin's stock price by connecting AppLovin to Mr. Tang, and Mr. Tang to various bad acts.

As part of this campaign, Defendants also tarred Plaintiffs indiscriminately with similar false claims of wrongdoing.  But Defendants knew that those sweeping, extravagant, and defamatory claims had no merit, and certainly no support in their "research."  They were intended to further sensationalize Defendants' already tendentious assertions about AppLovin and Mr. Tang.  Plaintiffs bring this case to reveal the truth behind the short-and-distort curtain.

## NATURE OF THE ACTION

1.      Lamarco (through Culper) is a "short seller" known for publishing false and defamatory "research reports" on its target stock while taking a short position in the stock in order to artificially drive the company's stock price down and therefore profit from the stock's downward price movement.

2.      Plaintiffs bring this damages action against Defendants for disseminating and publishing false and misleading statements about Plaintiffs.  Without any basis, Defendants have attributed a series of bad acts, many of which are criminal in nature, to each and all of the Plaintiffs.

3.      Defendants' libel centers on a portion of their "research report" on AppLovin, titled "Behind the Red Curtain – CCP Intelligence, Human Trafficking, Money Laundering; Undisclosed Stock Pledges; Secret Chinese e-Commerce Deals" (the

3

"Report").  In their Report, Defendants included a visual "summary" of their purported views that contains numerous false and defamatory statements and insinuations regarding Plaintiffs.  *See* Report at 13.  The Report is attached as Exhibit A.

4.      The visual purports to link Plaintiffs and a variety of bad acts, calling out "Money Laundering," "Forex Fraud," "Disappearances," "Human Trafficking," "POGO Raids" (illegal offshore gaming) and "14K Triad" (the "Bad Acts"), among others.  Boxes, each representing a Plaintiff, are connected to each other, all ultimately leading to a large rectangle with the Bad Acts listed in red text.

5.      Each Plaintiff has its own labelled distinct box in the Libelous Graphic. Defendants did this to distinguish Plaintiffs from one another.

6.      The Bad Acts, however, are not siloed; they are listed together in a large box, typefaced in red text, and are not attributed to any specific individuals or entities. Why?  Because Defendants did not want to distinguish the Bad Acts from one another or limit their claims to specific Plaintiffs.  Rather, every Plaintiff is tarred, directly or indirectly, with every listed Bad Act.

7.      Defendants knew that this sweeping set of assertions was false.  Besides being threadbare guilt-by-association of the worst kind, the body of the Report makes clear that there is no basis whatsoever to impute, as the Libelous Graphic does, all Bad Acts to all Plaintiffs.

8.      By inaccurately summarizing the Report, the Libelous Graphic is actionable apart from the rest of the Report under New York's "headline rule."

9.      The false and misleading statements described above and in more detail below are per se defamatory, and have caused significant harm to Plaintiffs, including

4

damage to Plaintiffs' goodwill and reputation, lost business opportunities, and other pecuniary damage.

## PARTIES

10.     The following Plaintiffs are incorporated under the laws of and have their principal places of business in the Hong Kong Special Administrative Region: (a) JC International Finance, (b) Prominence Trust Limited, (c) Southwind Media Holdings Limited, (d) Goldenway Financial Holdings Limited, (e) Goldenway Investments Holdings Limited, and (f) Goldenway Precious Metals Limited.

11.     The following Plaintiffs are incorporated under the laws of the British Virgin Islands and have their principal places of business in Hong Kong: (a) Fenton Capital, (b) Midterm Success Limited, (c) Angel Pride, (d) Discovery Key, and (e) Asian Creative Capital.

12.     FortuneGate Holdings Philippines Inc., is incorporated under the laws of Philippines and has its principal place of business in the Philippines.

13.     Plaintiff Goldenway Japan is incorporated under the laws of Japan and has its principal place of business in Japan.  Together, Plaintiffs Goldenway Japan, Goldenway Precious Metals Limited, Goldenway Financial Holdings Limited, and Goldenway Investments Holdings Limited are referred to as "Goldenway."

14.     Plaintiff IEC is incorporated in the Cayman Islands with its principal place of business in Hong Kong.

15.     Plaintiff Hong Wai Cheng is domiciled in Hong Kong, and a citizen of the United Kingdom.

16.     Plaintiff Ho Wong Meng is domiciled in Hong Kong, and a citizen of Malaysia.

17.     Defendant Christian Lamarco is, upon information and belief, a citizen of New York.   Upon information and belief, Lamarco is the sole member and owner of Defendant Shadyside Partners, LLC.

18.     Defendant Shadyside Partners, LLC, which, upon information and belief, does business as Culper, is a Delaware LLC and, upon information and belief, has its principal place of business in New York.   Because Defendant Lamarco is, upon information and belief, the sole member and owner of Shadyside Partners, it is a citizen of New York.

## JURISDICTION AND VENUE

19.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, Plaintiffs are citizens or subjects of foreign countries (Hong Kong S.A.R., Philippines, the United Kingdom, Malaysia, Japan, the Cayman Islands, and the British Virgin Islands), and Defendants are citizens of New York.

20.     This court has personal jurisdiction over Defendants because Defendants are citizens of New York.

21.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(1) because Defendants reside and/or operate in Manhattan.

## DEFENDANTS' DEFAMATORY STATEMENTS

### A.     Defendants Falsely Publish and Disseminate Information as Part of its Short and Distort Scheme

22.     Culper was founded in 2019.   It presents itself as an "activist short seller" that provides "investment research" to "expose companies which have misrepresented their

operations, failed to disclose significant risks, misused capital, possess accounting irregularities, or otherwise deceived investors." Upon information and belief, Lamarco, through Culper's webpage, publishes purported "research reports" on several companies in which Lamarco has taken a "short position." Lamarco and Culper stand to gain directly and substantially by profiting from a decline in the target company's stock price.

23.    Consistent with a "short and distort" modus operandi, Defendants have previously been sued multiple times for publishing false and defamatory statements about their targets.[3]

24.    On June 12, 2025, Defendants published the 30-page Report on Culper's website, www.culperresearch.com, purporting to present "research" on AppLovin.

25.    On the same day, Defendants further disseminated the Report by posting on the Culper account on social media platform X with a link to the Report on Culper's website, similarly confirming that Defendants ". . . are short AppLovin $APP . . ."

26.    Defendants' acts in publishing the Report form part of their "short and distort" scheme intended to drive down the price of AppLovin's stock so that they may profit from purchasing the shares at a lower price. The Report is prefaced with a disclaimer disclosing that Defendants hold short positions in AppLovin stock and "are likely to immediately transact in these securities." Defendants thus stood to profit directly and immediately from any decline in AppLovin's share price caused by the Report's

---

[3]*See LifeMD, Inc. v. Christian Matthew Lamarco,* No. 2:21-cv-01273, ECF No. 7 (W.D.Pa. May 13, 2021) (alleging libel per se and trade libel with action subsequently dismissed by all parties)*; Gorilla Technology Group, Inc. v. Shadyside Partners, LLC,* No. 1:25-cv-03142, ECF No. 21 (S.D.N.Y. June 5, 2025) (alleging libel per se and trade libel with action subsequently settled); *Tecnoglass Inc., v. Christian Lamarco,* No. 1:25-cv-07450-PAE (S.D.N.Y. Sept. 9, 2025) (alleging defamation per se with action subsequently voluntarily dismissed by Plaintiffs).

publication.  Defendants are therefore financially incentivized to publish and disseminate information that depicts its target or targets in a harmful manner to maximize the negative impact on the market, regardless of the truth of their claims.

27.    The Report names several entities allegedly connected with AppLovin at the time—Angel Pride, Midterm Success and Discovery Key.  The Report further references other entities (including Plaintiffs here) allegedly associated with Mr. Hao Tang, whom Defendants allege was also connected to AppLovin.

**B.    The Libelous Graphic Falsely Attributes All Bad Acts to All Plaintiffs**

28.    The Report has three segments.  Broadly, Segment One (pages 6-13) purports to link AppLovin to Plaintiffs.  Segment Two (pages 13-26) purports to link Plaintiffs among others to various bad acts.  Segment Three (pages 26-30) purports to link AppLovin to other purported bad actors.

29.    The Libelous Graphic appears at the top of Segment Two.  At the bottom of the Libelous Graphic, a red box encloses the red-typefaced Bad Acts.  The Bad Acts are not grouped into distinct boxes.  Rather, all arrows from all Plaintiffs lead, directly or indirectly, to the large rectangle containing the Bad Acts.  The Libelous Graphic (below) attributes, directly or impliedly, all Bad Acts to all Plaintiffs.

8

## Hao Tang's Ties to CCP, Money Laundering, Human Trafficking, and Data Harvesting Operations

So who is Hao Tang – AppLovin's longtime Chinese backer tied to Angel Pride, Midterm Success, *and* Discovery Key? **In what follows, we detail – using entirely public sources – Hao Tang's numerous connections tie to Chinese espionage, propaganda, data harvesting, human trafficking, money laundering, murder-for-hire, and other such unsavory operations.** The below is a visual summary of a few of our most salient views.

| Angel Pride | | Midterm Success | | Discovery Key | |
|---|---|---|---|---|---|
| Prominence Trust | | Asian Creative Capital | | 18/F Three Exchange Square, HK | |
| Lewis Ho | Unit 11, 22/F, Global Gateway Tower, HK | Hao Tang | | Ho Wong Meng | Hong Wai Cheng |
| Goldenway | Southwind Media | Fenton/Montclair | JC Int'l Finance | FortuneGate | IEC |
| CCP Espionage, Money Laundering, Forex Fraud, Disappearances | Mediapro CCP Propaganda Deal | HongShan, ZhenFund, ByteDance, RedNote | Huang Youlong, She Ziajing, KK Park, Human Trafficking | Liduan Wang, POGO Raids, Human Trafficking | HK Casinos, Cheng Family, 14K Triad |

30. However, the Report does not support those sweeping assertions. In fact, the Report expressly contradicts the Libelous Graphic. The body of the Report makes clear that the Plaintiffs have no connection in any sense to most or any of the Bad Acts described in the Libelous Graphic.

31. For example: The Report describes Discovery Key as one of Mr. Tang's offshore entities. It makes no connection between Discovery Key to any of the Bad Acts.

32. Aa another example: the Report describes Southwind as having acquired a majority stake in Mediapro, fired Mediapro's CEO, and signed an agreement with China Media Group, which is supposedly a "propaganda arm" of the CCP. But the Report says nothing else about Southwind, much less anything about the Bad Acts.

33. On scattered occasions, the Report purports to link specific Plaintiffs to specific Bad Acts. For example, the Report purports to link Plaintiff Fenton Capital to

9

"CCP-censored Rednote."  Report at 18-19.  But the Libelous Graphic links Plaintiff Fenton Capital to all Bad Acts, and not only to RedNote.

34.     As another example, the Libelous Graphic falsely draws a direct connection between Plaintiff JC International Finance and the Bad Acts, when the body of the Report makes clear that no such connection exists.  Rather, the only tie Plaintiff JC International Finance supposedly has to one of the Bad Acts—human trafficking—is purportedly as follows:

   a.  The Report states that Hao Tang supposedly loaned money to someone named Huang Youlong via JC International Finance.  Report at 19.

   b.  Culper notes there is "speculation" that Youlong is connected to "KK Industrial Park," which is known to be a "human trafficking hub."  *Id.*

   c.  This is apparently also the support for including several of the other bad acts listed in the Libelous Graphic in addition to human trafficking: "She Zhijiang," "KK Park," and "14K Triad."  *Id.*

35.     The connection between JC International Finance and "human trafficking"—to say nothing of the other Plaintiffs—is non-existent and absurd.  The alleged loan has nothing to do with "KK Industrial Park," and the source cited in the report (which indicated Huang had defaulted on the loan) says nothing to that effect.  Defendants would have every reason to doubt the veracity of any connection between Plaintiffs (including JC International Finance) and "human trafficking."

36.     The "connection" between JC International Finance and "14K Triad" is equally absurd.  The Report suggests that KK Industrial Park was run (in part) by Huang's cousin, She Zhijiang, who in turn was supposedly "associated with former Chinese triad

10

leader 'Broken Tooth.'"  Report at 4.  In other words: because the lender's *cousin* supposedly associated with a former gangster, Hao Tang and JC International Finance are linked to that gang.  To be sure, the cited source says nothing to connect JC International Finance (much less any other Plaintiff) to She Zhijiang, and still less any of her associates, and even less so any triad activity.  JC International Finance has no stated connection whatsoever with any other Bad Acts such as "Money Laundering" or "Forex Fraud."

37.    The Libelous Graphic further draws a direct connection between Plaintiff IEC and Plaintiffs Ho Wong Meng (CEO) and Hong Wai Cheng (board member) and the Bad Acts, falsely stating or implying that they are directly involved in all the Bad Acts. But there is no connection between IEC and the Bad Acts.  And none is listed in the Report.

38.    The Libelous Graphic draws a direct connection between Ho Wong Meng and FortuneGate Holdings Philippines and the Bad Acts, falsely stating or implying that they are directly involved in all the Bad Acts.  But Ho Wong Meng has no connection to any of the Bad Acts, and the only connection stated as to FortuneGate Holdings Philippines is so remote as to be non-existent.

a.  The Report says that Ho Wong Meng served as CEO of Plaintiff FortuneGate Holdings Philippines.  Report at 22.

b.  It also says that Liduan Wang was at one time Chairman of FortuneGate Holdings Philippines.  *Id.*

c.  It then lists various alleged ties between Liduan Wang and certain Bad Acts: POGO Raids and human trafficking, none of which are alleged to have anything to do with Ho Wong Meng, FortuneGate Holdings Philippines, or any of the other Plaintiffs.  *Id.*

11

39. In other words, the supposed link to "human trafficking" is facially absurd —just because someone was supposedly chairman of a company at one time does not mean that the company or its executives are connected with everything that person ever did, in any capacity. Even if counterfactually FortuneGate Holdings Philippines were connected to some of the Bad Acts, it would not mean that FortuneGate Holdings Philippines and Ho Wong Meng were linked to *all* of the Bad Acts.

40. All of the cited sources in the Report as to Liduan Wang would have given Defendants obvious reasons to doubt the veracity of any connection between Plaintiffs and "human trafficking" or "POGO raids."

41. In these and many other permutations, the Libelous Graphic's broad, indiscriminate smearing of Plaintiffs with the Bad Acts—acts that Culper knows they had nothing to do with—is wholly unjustified.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Libel Per Se)

42. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

43. The Libelous Graphic is defamatory per se because it accuses all Plaintiffs of all Bad Acts, such as human trafficking, money laundering, forex fraud, and involvement in Chinese Triads. The Libelous Graphic imputes serious criminal misconduct to the Plaintiffs and describes conduct, characteristics or conditions incompatible with the proper exercise of a lawful business, trade or profession, and otherwise subject Plaintiffs to distrust, ridicule, contempt or disgrace.

12

44.    Other people and companies do not want to do business with criminals, human traffickers, and fraudsters.

45.    The Libelous Graphic is of and concerning the Plaintiffs because it specifically names them.

46.    The Libelous Graphic is false because it attributes all Bad Acts to all Plaintiffs, when the truth is anything but.  Plaintiffs allege that the following statements relating to the following Bad Acts are false:

    a.  As to Plaintiffs Angel Pride, Midterm Success, Discovery Key, Prominence Trust, Asian Creative Capital, Ho Wong Meng, Hong Wai Cheng, Fenton Capital, and IEC: all Bad Acts.

    b.  As to Plaintiffs JC International Finance, FortuneGate Holdings Philippines, and Southwind Media: "Money Laundering," "Forex Fraud," "Disappearances," "Human Trafficking," "POGO Raids," and "14K Triad."

    c.  As to Goldenway: "Human Trafficking," "POGO Raids," and "14K Triad."

47.    Defendants knew or recklessly disregarded the likelihood that the Libelous Graphic was false in these ways.  The Report indicates that Defendants knew that all Bad Acts could not be attributed to all Plaintiffs.  But the Libelous Graphic indiscriminately imputes all Bad Acts to all Plaintiffs without regard to the inherent implausibility of such allegations, the facial absurdity of the alleged connections in the Report, or the fact that there is no connection in the Report at all for many Plaintiffs to any of the Bad Acts.  At the very least, the Report falsely implies a sweeping array of non-existent connections to serious wrongdoing by the Plaintiffs in a wholly unacceptable manner.  To the extent the above allegations about the connections between Plaintiffs and the Bad Acts are false by

13

implication rather than expressly, those false implications were intended and endorsed by Defendants, who gratuitously included all of the Plaintiffs in the Libelous Graphic, in separate and distinct boxes, and purposefully directed the Report's readers to consider all of the Bad Acts together rather than in any particularized manner.

48.    The Libelous Graphic's defamatory deviations and distortions *vis-a-vis* the Report evidence Defendants' scienter.  That is, if Defendants believed or felt they could defensibly represent that Plaintiffs were actually connected to any Bad Acts—for example, there was a connection between IEC and the "14K Triads"—Defendants would have done so in the Report because Defendants were financially incentivized to do so.  They did not. The same goes for all the false statements referenced above.

49.    Defendants, at the very least, harbored grave doubts about whether their statements were true, and whether any of the sources cited in the Report supported those statements.

50.    Defendants had a direct economic incentive to publish harmful statements about Plaintiffs because Defendants shorted AppLovin and intended to cause AppLovin's stock price to crater.

51.    Defendants had a preconceived storyline that Plaintiffs were criminals, fraudsters, and human traffickers.  The Libelous Graphic was designed to, and did, further that storyline.

52.    Defendants combined their preconceived storyline with a lack of reasonable investigation.  For example, if Defendants had adequately investigated whether IEC had any connection to "human trafficking," they would have realized that there is no such connection.  The lack of evidence for a connection was known to Defendants because

14

Defendants would have put such evidence in the Report, and no such evidence appears. The same is true for other false statements described above. At a minimum, there was obvious reason to doubt the veracity of any of the links between Plaintiffs and the Bad Acts that could conceivably have been derived from the sources cited in the Report (or any others).

53. Defendants' actions have damaged Plaintiffs' reputation and resulted in loss of business and trade. As a result of the foregoing, Plaintiffs are entitled to an award of presumed, compensatory and punitive damages against Defendants, and costs.

## Prayer for Relief

54. WHEREFORE, Plaintiffs pray for an award of damages of no less than $1,000,000, permanent injunctive relief as appropriate, and other and further relief as the court may find just and proper.

## Jury Demand

55. Plaintiffs hereby demand a jury trial on all claims and issues presented in this Complaint so triable.

Dated: June 10, 2026

By:  */s/ Benjamin A. Fleming*
Benjamin A. Fleming
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
benjamin.fleming@hoganlovells.com


*Counsel for Plaintiffs*