IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

WONG MENG HO, HONG WAI CHENG, FORTUNEGATE HOLDINGS PHILIPPINES INC., and INTERNATIONAL ENTERTAINMENT CORPORATION;

*Plaintiffs,*

v.

CHRISTIAN LAMARCO and SHADYSIDE PARTNERS, LLC d/b/a CULPER RESEARCH,

*Defendants.*

HAO TANG;

*Plaintiff,*

v.

SHADYSIDE PARTNERS, LLC (*d/b/a* CULPER RESEARCH) and CHRISTIAN LAMARCO,

*Defendants.*

CIVIL ACTION NO.: 1:26-cv-04930-JMF

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT, MOTION FOR FEES, AND MOTION TO STRIKE PORTION OF PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

ARGUMENT .......... 2

I. The Challenged Statements are Conclusions Drawn From Fully Disclosed and Undisputed Facts .......... 2

i. "Ties" to Money Laundering .......... 5

ii. Connections to a Jet in a Photograph of a CCP Journalist .......... 6

iii. The Report's Conclusion About Tang's "Ties" to Human Trafficking .......... 7

iv. The Report's Characterization of Crimes Relating to Anson Que .......... 8

v. The Graphic is a Fair Summary .......... 9

vi. FHP's "Ties" to Certain Activities. .......... 10

vii. Characterization of Tang as a "Bad Actor" .......... 11

II. Plaintiffs' Defamation-by-Implication Theory Contradicts the Report's Conclusions. .......... 12

III. Plaintiffs Failed to Allege Actual Malice .......... 13

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Amendment Praetorian v. N.Y. Times Co.*,
2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) ....................14

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015)....................13

*Biro v. Conde Nast*,
883 F. Supp. 2d 441 (S.D.N.Y. 2012)....................3, 13, 16

*BYD Co. Ltd. v. VICE Media LLC*,
531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022) ....................8, 14

*Cassava Sciences, Inc. v. Bredt*,
2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024) ....................13

*Chalpin v. Amordian Press, Inc.*,
128 A.D.2d 81 (1987) ....................4

*Coleman v. Grand*,
158 F.4th 132 (2d Cir. 2025) ....................2

*Cummings v. City of New York*,
2021 WL 1163654 (S.D.N.Y. Mar. 26, 2021) ....................7, 9

*Davis v. Boeheim*,
24 N.Y.3d 262 (2014) ....................11

*DeIuliis v. Engel*,
2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021)....................3

*Dfinity Found. v. N.Y. Times Co.*,
702 F. Supp. 3d 167 (S.D.N.Y. 2023), *aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024) ....................14, 15

*Dillon v. City of New York*,
261 A.D.2d 34 (1999) ....................11

*Germain v. M & T Bank Corp.*,
111 F. Supp. 3d 506 (S.D.N.Y. 2015)....................12

*Grifols, S.A. v. Yu*,
2025 WL 1826611 (S.D.N.Y. July 2, 2025) ....................3, 5, 14

*Immuno AG v. Moor-Jankowski*,
77 N.Y.2d 235 (1991) ....................15

*NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*,
2022 WL 900604 (E.D.N.Y. Mar. 28, 2022) ....................5

*Olivet Univ. v. Newsweek Digital LLC*,
2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024), *aff'd*, 2024 WL 5001841 (2d Cir. Dec. 6, 2024) ....................8

*Parks v. Steinbrenner*,
131 A.D.2d 60 (1st Dep't 1987) ....................6, 10

*Rappaport v. Barstool Sports Inc.*,
2024 WL 88636 (2d Cir. Jan. 9, 2024) ....................6

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
86 A.D.3d 32 (2011) ....................4

*Silsdorf v. Levine*,
59 N.Y.2d 8 (1983) ....................4

*St. Amant v. Thompson*,
390 U.S. 727 (1968) ....................13

*Steinhilber v. Alphonse*,
68 N.Y.2d 283 (1986) ....................12

*Stepanov v. Dow Jones & Co., Inc.*,
120 A.D.3d 28 (1st Dep't 2014) ....................12

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017) ....................8

*Triano v. Gannett Satellite Info. Network, Inc.*,
2010 WL 3932334 (S.D.N.Y. Sept. 29, 2010) ....................8, 9

*Valley Elecs. AG v. Polis*,
2022 WL 893674 (2d Cir. Mar. 28, 2022) ....................3, 4

In their Opposition, Plaintiffs[1] concede that the conclusions and opinions they challenge in the Report are accompanied by disclosed facts, none of which Plaintiffs allege to be false. It is clear why Plaintiffs make this concession: the Report is replete with hyperlinks, screenshots, and embedded text accompanying Culper's conclusions about Hao Tang, his network, and Culper's ultimate conclusion—that these undisputed links posed a risk for AppLovin shareholders, especially given the company's claims of zero Chinese ownership.

Plaintiffs recognize that these disclosed facts doom their defamation claims, so they resort to making bald, sweeping accusations that Culper somehow "misrepresented" or "distorted" these facts. But this is empty rhetoric. Plaintiffs do not plead ***any*** such "misrepresented" or "distorted" underlying facts. Indeed, Plaintiffs do not dispute that, among the myriad connections the Report disclosed:

- Tang controlled Goldenway,[2] the entity linking Tang to many of the concerning activities and individuals the Report described,
- Tang is an officer of Renhe Goldenway alongside Dai Yongge, who was accused of engaging in "money laundering activities,"
- Fu Xiaotian's last public posting showed her in front of a Goldenway-operated jet,
- FHP's Chairman Liduan Wang has connections to human trafficking and espionage allegations,
- Wong Meng Ho served at both IEC and FHP, and
- Anson Que was kidnapped, murdered, and his ransom was laundered through junkets.

[1] Capitalized words shall have the same meaning as in Defendants' Opening Brief.

[2] The Report consistently refers to Goldenway as "Tang's Goldenway," which Tang never disputes.

Report, 16, 21-22 & n.43, 23 25.

Ultimately, Plaintiffs' issue is with Culper's *conclusions* based on those facts. Plaintiffs are entitled to disagree with the Report's conclusions, but this disagreement cannot support a defamation claim. Instead, as the Second Circuit recently held, where one finds an opinion unflattering, "we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Coleman v. Grand*, 158 F.4th 132, 139 (2d Cir. 2025).

With no false statements to point to, Plaintiffs fall back on the refrain that Tang is a "foreign, passive minority shareholder in AppLovin" and that the Report, which outlined Culper's concerns about AppLovin, was "a smear campaign that treated Plaintiffs as collateral damage." Opp., 2. Not only is this wrong (the Report disclosed that Tang owned as much as 28% of AppLovin ahead of its 2021 IPO and at least 9.8% at the Report's publication, and held *undisclosed* margin loans against that stake—Report, 2), but legally irrelevant. As Culper made clear in its Opening Brief ("OB"), the Report's discussion of Tang was fundamental to its analysis of AppLovin: Tang's substantial, longstanding stake contradicted AppLovin's assurances of *zero* Chinese ownership, and was particularly problematic given Culper's conclusion (based on disclosed facts) that Tang and his network held numerous ties to unsavory conduct. And because the entire Report ultimately explained why Culper was short AppLovin, a reasonable reader would understand the Report as Culper's opinions.

## ARGUMENT

### I. The Challenged Statements are Conclusions Drawn From Fully Disclosed and Undisputed Facts.

Plaintiffs resist the characterization of the challenged statements as protected opinion by arguing that "opinions are only protected where an author 'fully and accurately set[s] forth' the underlying facts." Opp., 11. But Plaintiffs cannot credibly argue that the challenged statements

were not accompanied by the facts on which they were based. Indeed, they concede these disclosed facts throughout their Amended Complaint *and* Opposition. *See, e.g.*, AC, ¶¶ 88, 95-96; Opp., 12-15. New York courts have "consistently held that when an author fully sets forth the factual basis for a particular view (and that factual basis is not challenged as false), then the author's conclusion constitutes nonactionable opinion." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 468 (S.D.N.Y. 2012); *DeIuliis v. Engel*, 2021 WL 4443145, at *5 (S.D.N.Y. Sept. 27, 2021) ("[A]s the Engel Article cites to the Report as the basis for its conclusions …, the authors lay out the basis for their conclusions and thus these expressions of opinion are not actionable under New York law."). Culper's conclusions about Tang and his network from these disclosed facts are protected opinion. *Grifols, S.A. v. Yu*, 2025 WL 1826611, at *19 (S.D.N.Y. July 2, 2025) (statement was opinion where "both the assumption and the release that the assumption is based upon are made available to the reader[,]" so it was "clear that [short-seller] is presenting the underlying facts and then giving its own conclusion based on those facts").

Plaintiffs fare no better with the suggestions that the statements somehow imply undisclosed facts. Opp., 15, 22, 25. Where, as here, each challenged statement is accompanied by facts, there are no implied undisclosed facts. *Valley Elecs. AG v. Polis*, 2022 WL 893674, at *2 n.3 (2d Cir. Mar. 28, 2022) (defendant's "disclosure and the inclusion of hyperlinks to other sources also provide the basis for [defendant's] personal opinion, leaving it to the readers to evaluate [her claims] for themselves. We thus identify no factual allegations admitting a plausible inference that [defendant's] opinions implied knowledge of undisclosed facts" (cleaned up)).

Plaintiffs are correct that an opinion gleaned from *false or distorted* disclosed facts can be actionable—but Plaintiffs, though they make sweeping allegations of "misrepresented" or "distorted" facts, do not actually point to a single false or distorted underlying fact. Plaintiffs'

pleading deficiency is laid bare by the cases they cite. In *Silsdorf v. Levine*, 59 N.Y.2d 8, 10 (1983), the court found a statement actionable because it was premised on facts that were demonstrably false. Similarly, in *Chalpin v. Amordian Press, Inc.*, 128 A.D.2d 81, 87 (1987), a summary judgment case, the challenged opinion was based on purported contract terms that plaintiff demonstrated were incompatible with the document itself.

Further, Plaintiffs do not challenge Culper's argument that the overall context of the Report indicates to the reader that its content reflects Culper's opinion. OB, 25-28. Plaintiffs turn this argument on its head, suggesting that Culper believes short-sellers enjoy some automatic immunity from defamation claims. Opp., 24. That is absurd. Short sellers, just like any authors, are entitled to offer their opinions, accompanied by the facts on which they are based. Disclosure of a short-seller's financial interest is one way to signal the expression of opinion. OB, 26-27 (citing cases). That Culper was short AppLovin stock, whereas the complaint here regards statements about parties other than AppLovin, does not undermine this principle: because the *entire Report* explained why Culper was short AppLovin, a reader would reasonably understand the statements in the *entire Report*—including those about the Plaintiffs—as Culper's opinion. *Polis*, 2022 WL 893674, at *1 ("Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, we consider the broader written and social contexts of the alleged statements, which are often the key consideration[s] in categorizing a statement as fact or opinion." (cleaned up)). Plaintiffs' suggestion that the challenged statements are "factual question[s]," Opp. 14, 16-17, 19-21, 23, ignores that, even where a writing contains "isolated portions . . . [that] are arguably factual, those portions constitute facts supporting the writer's opinion, which renders the writing as a whole 'pure opinion' since it does not imply that it is based upon undisclosed facts." *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 45 (2011).

Plaintiffs seek refuge in two recent short-seller cases, but they are easily distinguished. In *NOVAGOLD Resources, Inc. v. J Cap. Rsch. USA LLC*, the challenged report (a) did not specifically disclose a short position, (b) did not accompany each conclusion with disclosed facts and (c) provided conclusions "without citation." 2022 WL 900604, at *5-6 (E.D.N.Y. Mar. 28, 2022). Likewise, in *Grifols*, the court found all but one challenged statement in a short-seller report protected opinion; the one remaining statement was "factual" because it falsely asserted that a company had an undisclosed loan—which was clear from the financial documents. As the court held, "the Report focuses on interpretation and analysis of publicly available facts. However, the statement that the Scranton Loan is undisclosed is not presented as a result of interpretation or analysis—it is presented as one of the publicly available facts." 2025 WL 1826611, at *13-14.

These uncontroversial principles support finding all of Plaintiffs' challenged statements—all of which are "interpretation and analysis of publicly available facts"—protected opinion:

**i. "Ties" to Money Laundering**

Tang argues the Report "falsely accuses [him] of involvement in money laundering." Opp., 14. But the Report says something meaningfully different: "Hao Tang's ***numerous ties to***" or "***network['s]*** involve[ment] in" money laundering. Report, 2, 4, 7, 14, 29 (emphases added). The Report then sets forth each fact on which ***this*** conclusion was based: that Tang controlled Goldenway (and related entities), which was accused of money laundering by both a Goldenway UK employee whistleblower and the FCA; a Goldenway Japanese affiliate transacted with a company raided amid reported "money laundering concerns"; and Tang was (and *remains to this day*) an officer of Renhe Goldenway alongside Dai Yongge, who was accused of engaging in "money laundering activities." Report, 14-15, 25.

***Tang does not challenge any of these disclosed facts***. Instead, Tang argues that even if Culper "disclosed 'facts' here, he distorted them" Opp., 15—but he does not identify (or allege) a

single ***specific*** distorted fact. Instead, he suggests these connections are only "attenuated" or "remote." AC ¶¶ 18-19, 21, 50, 68, 113, 119, 121. But this does not make the underlying facts false; it only reflects his disagreement about their relevance—a matter of opinion. Under New York law,

> [t]hat one may dispute the conclusions drawn from the specified facts is not, however, the test. So long as the opinion is accompanied by a recitation of the facts upon which it is based it is deemed a "pure opinion" and is afforded complete immunity even though the facts do not support the opinion. The rationale for this broad protection … is that the reader has the opportunity to assess the basis upon which the opinion was reached in order to draw his or her own conclusions concerning its validity.

*Parks v. Steinbrenner*, 131 A.D.2d 60, 65–66 (1st Dep't 1987); *see also* *Rappaport v. Barstool Sports Inc.*, 2024 WL 88636, at *2 (2d Cir. Jan. 9, 2024).

**ii. Connections to a Jet in a Photograph of a CCP Journalist**

Tang challenges "whether Tang assisted the CCP in disappearing Fu [Xiaotian]," Opp., 16, but, again, this is a mischaracterization of the Report, which instead opined that "Tang also ***appears to be linked*** to the 2023 disappearance of former CCP state journalist Fu." Report, 16 (emphasis added). The Report then discloses the facts underlying ***this*** conclusion: Fu's "last public postings" placed her in front of a jet operated by a Goldenway entity. *See id.* (citing FAA records). Tang does not dispute his connection to Goldenway, Goldenway's operation of the jet, or that Fu was a former CCP state journalist.

Instead, Tang argues that the statement that Fu was "last seen boarding a jet to Beijing" was false. Opp., 16. But in the paragraph discussing Tang's connections, the Report provides the context—"Fu's last *public* postings were in front of [Goldenway's jet]." Report, 16 (emphasis added). The Report then embeds the reference public posting: a social media photograph of Fu in front of the jet that Tang does not contest is operated by a company he controls. Tang does not argue that this was not Fu's last public posting, nor that the posting was in front of this jet. Tang's

accusation that the disclosed facts are "misstate[d]," Opp., 17, is therefore wrong. And whether Fu was last seen aboard, or in front of, this jet is immaterial because Tang does not dispute a connection to this jet through a company he controls.

**iii. The Report's Conclusion About Tang's "Ties" to Human Trafficking**

Tang challenges another statement the Report simply never made: *i.e.*, that he "knowingly lent money to support human trafficking." Opp., 17. The Report, however, describes how JC International loaned money to Huang Youlong, and then set forth the links between Youlong and human-trafficking operations. Report, 19-20. Tang does not dispute his connections to JC International, that JC International loaned money to Youlong, nor any of the facts connecting Youlong to human trafficking. While Tang challenges whether Goldenway *became* JC International, critically, he does not dispute the Report's disclosures of two additional independent links between Tang/Goldenway and JC International (the lender) that remained present: (1) a Goldenway affiliate is a shareholder of JC International, and (2) Lewis Ho, one of Tang's known associates, was a director of both JC International and Prominence Trust (another Tang-controlled company) at the time the loan to Youlong was made. Report, 19 & n.38. Tang concedes the first fact, Opp., 17, and does not argue (or allege) that the second is false. Indeed, JC International is a plaintiff in this case, underscoring its continued relationship with Tang and his network.[3]

Rather than challenge these disclosed facts, Tang isolates a single sub-heading ("Hao Tang Lent Millions to Huang Youlong"), seeking to divorce it from the headings that precede it and the extensive discussion that follows. Opp., 18. That is precisely what New York law forbids. The sub-heading must be analyzed in the context of the text that both precedes and follows the headline. *Cummings v. City of New York*, 2021 WL 1163654, at *15 (S.D.N.Y. Mar. 26, 2021) ("A sub-

[3] Indeed, the Graphic (which Tang does not dispute) directly links Tang to JC International. Report, 13.

headline must be construed in conjunction with the body of the article."); *Triano v. Gannett Satellite Info. Network, Inc.*, 2010 WL 3932334, at *5 (S.D.N.Y. Sept. 29, 2010) (while headline referring to a "hunting death" was inaccurate because no death had occurred, it was not defamatory because article's content was substantially true and supplied clarifying context). Here, the Report made clear in its first discussion of Tang's connections Culper's conclusion that "Hao Tang *appears to* have lent money to Huang Youlong *via JC International Finance*." Report, 4 (emphasis added). The sub-heading, when read together with the text immediately following it, is reasonably understood as shorthand for this opinion, supported by the Report's disclosed connections between Goldenway, an entity Tang *does not dispute he controlled*, "via JC International," and the loan to Youlong. This is a "'fair index' of the 'substantially accurate' material included in the article." *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022).

**iv. The Report's Characterization of Crimes Relating to Anson Que**

Tang does not dispute the Report's disclosed facts that Anson Que was kidnapped, that a ransom was paid, that the ransom funds were laundered via the junkets, and that Que was subsequently murdered. Report, 23. Instead, against this backdrop of undisputed facts, Tang's challenge is to the Report's use of the phrase "paid murder" to describe this series of events, rather than just plain "murder." Opp., 19. But this turn of phrase ("paid murder" versus "murder") is legally immaterial, as it would not change the statement's "effect on the mind of the reader." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242-43 (2d Cir. 2017); *Olivet Univ. v. Newsweek Digital LLC*, 2024 WL 1892563, at *4 (S.D.N.Y. Apr. 30, 2024) ("[A] challenged statement is substantially true and thus non-actionable if its 'gist,' 'sting,' or 'substance' is true."), *aff'd*, 2024 WL 5001841 (2d Cir. Dec. 6, 2024). In other words, whether

Tang has links to groups connected to kidnapping, ransom and *murder* as opposed to kidnapping, ransom, and *paid murder* is not a distinction that would resonate with an ordinary reader.[4]

**v. The Graphic is a Fair Summary**

FHP's and IEC's challenges to the Graphic suffer from the same defect as Tang's challenges to headlines—they plainly ignore both the Graphic's purpose and context. *Triano*, 2010 WL 3932334, at *5. Critically, the Graphic was presented as a visual aid "summar[izing]" Culper's views regarding a network of relationships thoroughly discussed and sourced throughout the Report. Report, 13.

For its part, FHP appears only to dispute that the Graphic connects it to "human trafficking" and "POGO raids." Opp., 21. FHP ignores that there are two intermediate phrases connecting the chain from FHP to "human trafficking": Liduan Wang (a link FHP "do[es] not challenge," *id.*) and POGO Raids. Report, 13. Far from resting on "unexplained connections," Opp. 21, the Report includes extensive, hyperlinked facts linking Wang to POGO operations and human trafficking accusations. Report, 21-22; OB, 19, 23. ***FHP does not argue that any of these facts are false or distorted***. Its argument that "nothing in the Report's text or sources supports" the labels "POGO Operations" or "human trafficking" is thoroughly belied by the Report. And FHP's objection that the alleged misconduct was committed by others connected to it, Opp., 20-21, speaks exactly to the purpose of the Graphic—to illustrate the multiple "ties" and "connections." The Graphic is therefore a "fair index" summary of what follows in the Report with supporting sources, none of which FHP disputes. *See Cummings*, 2021 WL 1163654, at *15.

As for IEC, Ho Wong Meng, and Hong Wai Cheng, they complain only that the Graphic "connected" them to the "14K Triad." Opp., 20-21. But this again ignores what the Graphic

---

[4] Tang argues that, in those cases, "imprecise labels" were used "for conduct that had actually occurred." Opp., 19. But the "conduct" here *did* occur, the dispute is over how precisely it was characterized.

actually depicts. First, it links Meng and Cheng to IEC, and Meng to FHP. Plaintiffs do not dispute these connections. The Graphic then connects IEC to "HK Casinos" (FHP) and "Cheng Family," and, ultimately, to "14K Triad." These connections are borne out in facts the Report disclosed, which demonstrated that Meng was CEO of both IEC and FHP, Report, 22 &. n.43, whose Chairman (Liduan Wang) was connected to a spa owned by She Zhijiang who ran Myanmar's KK Industrial Park. Report, 19-20, 22, 24. The Report also linked JC International to Youlong, who was linked to Myanmar's KK Industrial Park. *Id*. Again, IEC does not dispute any of these disclosed facts—just the Report's conclusions drawn. A reader does not have to agree with the conclusion, but the "recitation of the facts upon which it is based" provides the reader with "the opportunity to assess the basis upon which the opinion was reached in order to draw his or her own conclusions concerning its validity." *Parks*, 131 A.D.2d at 66.

**vi. FHP's "Ties" to Certain Activities.**

FHP's attempt to salvage challenged Statement 7 is similarly unavailing. The Report does not accuse FHP of espionage, money laundering and human trafficking, as FHP suggests. Opp., 21-22. Instead, the Report says FHP is "a Philippines casino operator ***tied to*** . . . Liduan Wang, ***who in turn has been linked to*** multiple Chinese espionage and human trafficking operations." Report, 21 (emphasis added). Again, the Report lays out the facts supporting ***this*** conclusion about FHP's "ties" and "links." FHP does not challenge its ties to Chairman Liduan Wang, Opp., 21, and the Report details two pages of hyperlinked connections between Liduan Wang and accusations of human trafficking and money laundering, as well as to a self-confessed Chinese spy. Report, 21-22. ***FHP does not argue that any of these facts are false or distorted***. FHP argues only that "the connections [Culper] identifies—resting on geography and genealogy—only demonstrate how far removed FHP is from the alleged misconduct." Opp., 22. FHP characterizes the links as mere happenstance, but—false as that is—that FHP argues the connections to be "too

remote" exposes that their disagreement is not with the facts, but with Culper's conclusion based on those facts. That is not defamation.

FHP's continued reliance on the fact that FCG publicly corrected its stated connection to Goldenway does not move the needle. Opp., 22-23. Whether FHP was or was not a part of Goldenway has no bearing on the Report's conclusion that *FHP* was linked to those involved in nefarious conduct. Further, the Report expressly disclosed the FCG correction, Report, 21-22, and explained why Culper believed the correction was unpersuasive given additional public facts the Report then disclosed. *Id.* Readers were presented with both the correction and the facts underlying Culper's view and were free to draw their own conclusions.

**vii. Characterization of Tang as a "Bad Actor"**

Tang no longer challenges the Report's conclusion that he is a "bad actor." Opp., 23.

While Tang now argues that "[b]y calling Tang a 'bad actor' in connection with these accusations, Lamarco told readers that Tang was personally involved in that [ ] conduct," *id.*, the Report did no such thing. The Report's conclusion about Tang's "***ties to***" various nefarious activities—by its plain meaning—does not mean that Tang was "personally involved" in that conduct. Tang doubles down on a contrived interpretation of "ties," insisting that it somehow means that Tang *himself* participated in this conduct. Opp., 15.[5] But this is wrong for several reasons: first, it requires ignoring the word's plain meaning, contrary to longstanding law that, in assessing defamatory meaning on a motion to dismiss, if the challenged words are "not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made by a strained or artificial construction." *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1999). The Report never

[5] Tang cites *Davis v. Boeheim*, 24 N.Y.3d 262, 269-70 (2014), for this proposition, *see* Opp. 15, but that case found potential defamatory connotation where the statement implied facts unknown to the reader, which is not relevant here.

accused Tang of personally engaging in this conduct; instead, it discussed in depth the company that Tang keeps and *their* conduct—none of which Tang identifies as false.

Second, Tang's argument seeks to interpret "ties" and "network" in isolation. Instead, the words must be understood in the context of the Report as a whole, which repeatedly describes Tang's *connections* and *their* misconduct (the facts for which Plaintiffs do not challenge as false or distorted). *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986) (statements should be "considered in the context of the entire communication").[6]

Third, Tang's challenge to the conclusion about his "direct ties" to misconduct ignores that the Report connected Goldenway (a Tang-controlled company) directly to unsavory allegations, including money laundering. *See* Report, 14-15; *see also id. at* 16-18 (connecting Southwind, another Tang-controlled company, to CCP propaganda).

## II. Plaintiffs' Defamation-by-Implication Theory Contradicts the Report's Conclusions.

By clearly disclosing the numerous connections between Tang, the entities he controlled or with whom he was affiliated, and those engaging in problematic activities, the Report removes any implication that Tang *himself* engaged in the conduct. *See Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28, 38-40 (1st Dep't 2014) (affirming dismissal of defamation-by-implication claim where "no reasonable reading …. could lend itself to a defamatory implication"). Tang argues that the Report nowhere says that it is *not* accusing Tang of misconduct, but that is absurd.

Moreover, as courts have recognized, "'the Constitution protects an author's right to draw an explicit conclusion from fully disclosed facts, then an unstated inference that may arise in a reader's mind after reading such facts is also protected as an implicit expression of the author's opinion.' Therefore, where 'the implication is simply reflective of the author's opinion based on

[6] Tang cites to *Germain v. M & T Bank Corp.*, but there—unlike here—the statement that an individual was "no good" was actionable because it was based on *undisclosed* facts. 111 F. Supp. 3d 506, 536 (S.D.N.Y. 2015).

the facts set forth,' a plaintiff cannot state a claim for defamation by implication." *Cassava Sciences, Inc. v. Bredt*, 2024 WL 1347362, at *19 (S.D.N.Y. Mar. 28, 2024) (quoting *Biro*, 883 F. Supp. 2d at 467-68). This principle dooms Plaintiffs' claim for defamation by implication. Plaintiffs do not challenge any of the facts underlying a potential defamatory implication. They continue to point to the same undisputed connections, summarized headings, and supported conclusions in the Report—but do not argue that any of them is false. If, on the basis of these undisputed facts, a reader were to infer that Tang was personally involved in this activity, "that defamatory implication arises only because of the facts set forth in the article *that he does not allege to be false*. Thus, even if the inference is a reasonable one, it is simply the implicit opinion of the author based on the unchallenged facts, fully set forth in the rest of the article." *Biro*, 883 F. Supp. 2d at 469.

**III. Plaintiffs Failed to Allege Actual Malice**

Plaintiffs argue they have adequately alleged actual malice by invoking the same failed arguments. Plaintiffs throw around the words "fabricated" and "misrepresented," but without any meat on the bones. If they are suggesting that Culper "fabricated" the challenged statements, that is completely belied by the disclosed facts accompanying each of the Report's conclusions. *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015) ("[A] plaintiff may allege that 'a story [was] fabricated by defendant' if the defendant provides no source for the allegedly defamatory statements or if the purported source denies giving the information." (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968))). To the extent Plaintiffs are referring to "fabricating" the disclosed facts, again, as extensively set forth herein, Plaintiffs identify no such "fabricated" fact.

Plaintiffs' lone example of a "misdescribed" source is whether a Filippino news article said Anson Que was the victim of kidnapping, ransom, and "paid murder" (as the Report described it) or whether he was the victim of kidnapping, ransom, and murder (as the Plaintiffs suggest). Opp.,

31. Tang characterizes this "gap" as somehow reflective of "knowledge," *id.*—but the delta between "kidnapping, ransom, and murder" and "kidnapping, ransom, and 'paid murder'" is a far cry from rigorously pleading that Culper *actually* entertained a serious doubt about the veracity of its statements. *BYD*, 2022 WL 598973, at *3 ("To the extent that there is an appreciable difference in meaning between the statement that BYD used forced Uyghur labor 'in its supply chain,' and the statement that BYD 'directly or indirectly benefit[ed]' from such labor, standing alone, it is far too insignificant to support a claim of actual malice."). It is also a far cry from the circumstances the *Grifols* court found supported actual malice, noting that it was plausible that the defendant saw evidence that the challenged statement of fact was false, "and, notwithstanding having seen the disclosure, stated precisely the opposite." *Grifols*, 2025 WL 1826611, at *20. The slight deviation that Tang points out in the Report cannot, by any stretch of the imagination, be considered on par with the circumstances in *Grifols*.

Plaintiffs' remaining examples simply concern Culper's conclusions. But the Report adequately disclosed the facts on which Culper based its conclusions about Tang's relationship to the loan to Youlong (through Goldenway and JC International) and Tang's relationship to Goldenway and Fu. The same is true with respect to the connections the Entity Plaintiffs challenge in the Graphic and the links the Report draws regarding FHP, which are premised on facts Plaintiffs do not argue are misrepresented or distorted. And that is fatal to any plausible suggestion that Culper actually entertained subjective doubt about the resulting conclusions drawn. *Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 176 (S.D.N.Y. 2023) (no actual malice where defendants "named their publicly available sources and included links to those sources throughout the report"), *aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024); *1st Amendment Praetorian v. N.Y. Times Co.*, 2025 WL 949575, at *10 (S.D.N.Y. Mar. 28, 2025) (no actual malice where "there are no

allegations here that Defendants failed to provide sources or relied on unverified anonymous sources in publishing the challenged statements").[7]

Plaintiffs argue that because the Report used "qualifying language" in some instances and not others (for example, in shorthand headings), that somehow supports an inference that Culper knew statements were false. This is ludicrous, and it is not surprising that Plaintiffs cannot find a single case to support this position. That some versions of an opinion contain qualifiers while other expressions of that same opinion do not, is not a legally meaningful distinction. It does not mean that the author was unsure about one iteration of the statement and sure about the other. Particularly where the versions of the statements without qualifiers appear in shorthand headings, it certainly does not demonstrate that Culper *actually doubted the veracity of its statements*. Plaintiffs' argument is premised on an improper isolated reading of each statement, divorced from the context of the Report as a whole. *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 250 (1991) (statements should be "read … in context to test their effect on the average reader," and courts are "not to isolate particular phrases but to consider the publication as a whole").

Finally, Plaintiffs continue to rely on the ICIJ article for actual malice purposes, despite falsely pleading that the Report "nowhere acknowledged" the article. AC, ¶ 59. Regardless, the article does not render any of Culper's disclosed sources false, nor does it contradict any conclusion the Report draws from these sources. That article, which suggested that a French court rejected Tang's extradition to China, says nothing about Tang's connections set forth in the Report. If anything, it might raise further concerns about Tang. Even so, the mere "fact that an article is

[7] Because Tang does not dispute that Fu was last publicly photographed in front of a Goldenway-operated jet, the fact that this photograph was in an X post from an "unverified" account is irrelevant. Nor is it a conclusion "based *wholly* on an unverified, anonymous source." *Dfinity*, 2024 WL 3565762, at *2.

one sided or fails to include as many positive features about the subject as negative ones has no tendency to prove that the publisher believed it to be false." *Biro*, 963 F. Supp. 2d at 285.

## CONCLUSION

The Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted,

**COZEN O'CONNOR**

By: */s/ Michael B. de Leeuw*

Michael B. de Leeuw
Tamar S. Wise
mdeleeuw@cozen.com
twise@cozen.com
3 WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
Telephone: (212) 908-1331
Fax: (646) 461-2090

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on November 5, 2026, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

Dated: November 5, 2026

/s/ *Michael B. de Leeuw*
Michael B. de Leeuw

**CERTIFICATION REGARDING WORD COUNT**

I, Michael B. de Leeuw, an attorney at the law firm Cozen O'Connor, counsel for Defendants Shadyside Partners, LLC and Christian Lamarco in the above-captioned consolidated action, certify pursuant to Local Rule 7.1(c) that Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss Plaintiffs' Consolidated Amended Complaint, Motion for Fees, and Motion to Strike Portion of Plaintiffs' Amended Complaint, not including the case caption, cover page, table of contents, table of authorities, signature block, or certifications, contains 4,999 words, and thus complies with the word count set forth in the Court's Order at ECF No. 44.

Dated: November 5, 2026

*/s/ Michael B. de Leeuw*
Michael B. de Leeuw